## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LINDA J. ZIMMERLEE,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 04-CV-657-PJC** |
| | ) | |
| **JOANNE B. BARNHART, Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Claimant, Linda J. Zimmerlee ("Zimmerlee"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Zimmerlee appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court AFFIRMS the Commissioner's decision.

### Claimant's Background

Zimmerlee was born on May 3, 1959 , and was 44 years old at the time of the hearing. (R. 226). She obtained her GED in 1995. (R. 226). Claimant has no previous work experience in the past 15 years that rises to the level of substantial gainful activity. (R. 227). Zimmerlee alleges an

inability to work commencing November 20, 2002[1], due to osteoarthritis in her left hip and congenital clubfoot. (R. 91). She also claims to suffer from a major dysfunction of the joints in her left hip and leg, a limp stemming from a 4 cm decrease in length of her left leg compared to her right, hip pain, stiffness in hands and hips, and decreased grip strength in both hands. (R. 214-215).

Zimmerlee's medical records from April 28, 1999 to December 12, 2002 indicate that she was diagnosed with osteoarthritis and limited flexion in her left hip, and treated with Indocin, then Trilisate and finally Salsalate for her arthritis. (R. 158-200). During that time Claimant complained of left hip pain and was prescribed Ibuprofen for the pain. (R. 190). An x-ray from the initial doctor's visit indicated severe osteoarthritic changes with joint narrowing and deformity of the left femur. (R. 189).

Zimmerlee also sought treatment at the OSU Health Care Center from July 9, 2003 through October 24, 2003. (R. 148-57). On August 7, 2003, Zimmerlee complained to Dr. Thomas Pickard at the Center that her severe hip pain was not relieved by the Bextra she was taking. (R. 150). Dr. Pickard ordered an x-ray of her left hip which showed "severe osteroarthritis with deformity of the head of the femur and increased slope of the acetabulum," as well as "severe loss of joint space, bony sclerosis and subchondral cysts." (R. 156). He also increased the prescribed dose of Bextra. *Id.* On September 17, 2003, Zimmerlee reported that the Bextra had helped but did not last all day so she was taking two at night to help her sleep. (R. 149). She also complained of knee pain from "scrubbing floors." *Id.* Zimmerlee continued to complain of hip pain during a follow-up visit at the Center on October 24, 2003. (R. 148). Dr. Denton noted that although Zimmerlee reported that she

---

[1]     Claimant's Supplemental Security Income ("SSI") application sets forth that she became disabled on September 30, 1993. (R. 83) At the hearing before the ALJ Claimant amended the onset date of her disability to November 20, 2002. (R. 213)

suffered from rheumatoid arthritis as well as osteoarthritis, there were no physical findings of rheumatoid arthritis in her records. *Id*. Dr. Denton noted that Zimmerlee had an antalgic gait and severe osteoarthritis in her left hip and recommended that she have a hip replacement. *Id*. When Claimant informed Dr. Denton that she could not afford a hip replacement, Dr. Denton suggested "OU in OKC as possibility for this." *Id*. Zimmerlee reported that Bextra and Lortab helped some with her pain but that Lortab upset her stomach. *Id*. Accordingly, Dr. Denton prescribed Ultram in addition to Bextra for treatment of the arthritis. *Id*.

On February 10, 2003, Zimmerlee underwent a consultative examination by Angelo Dalesandro, D.O. (R. 137-43). The claimant's chief complaints at this exam were left hip pain, swelling of the ankles, stiffness in the hips, and pain and stiffness in her fingers. (R. 137). Dr. Dalesandro diagnosed Zimmerlee with osteoarthritis of the left hip and exogenous obesity. (R. 139). The examination also showed that Claimant had a "slightly slow gait" and "left limp" as there was "atrophy of the left leg with 4 cm shortening as compared to the right." *Id*. He suggested that Zimmerlee "may have had aseptic necrosis of the left hip as a teenager resulting in the atrophy and shortening of her leg." *Id*. Dr. Dalesandro observed tenderness and a decrease in the range of motion in her left hip, decreased range of motion in her right ankle, and "possible moderate levoscoliosis in the lumbodorsal area." (R. 138, 143). He noted that she had equivocal Tinel's signs in both hands, "grade 1 pes planus bilaterally," and her grip strength in her right hand was 13kg, and 11kg in her left hand. (R.138-139).

DDS consulting physician, Dr. Mungul, completed a physical residual functional capacity ("RFC") assessment of Zimmerlee's impairments on February 25, 2003. (R. 145-47). Dr. Mungel noted Zimmerlee's significant limp, restricted range of motion in her left hip, and atrophy in her left

leg and determined that she could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for at least 2 hours and sit for a total of 6 hours in an 8-hour workday, but was limited in pushing or pulling with her lower extremities due to the decrease in length in her left leg and in range of motion of her left hip. (R. 145-47).

## Procedural History

On November 20, 2002, Zimmerlee applied for Supplemental Security Income benefits under Title XVI, 42 U.S.C. § 1381 *et seq*. (R. 83-85).  Claimant's application for benefits was denied in its entirety initially and on reconsideration. (R. 67-68).  A hearing before ALJ Lantz McClain, was held March 9, 2004, in Tulsa, Oklahoma. (R. 210-40).  By decision dated March 22, 2004, the ALJ found that Claimant was not disabled at any time through the date of the decision. (R.19-27).  On July 29, 2004, the Appeals Council denied review of the ALJ's findings.  (R.6-9).  Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. § 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. §423(d)(1)(A).  A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A).  Social

Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 416.920. [2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).

Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion."  *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002) (citation omitted). In reviewing the decision of the Commissioner, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Id.*  Nevertheless, the court examines "the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determines if the substantiality of the evidence test has been met." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).

---

[2]    Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 416.972.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 416.920.

**Decision of the Administrative Law Judge**

The ALJ made his decision at the fifth step of the sequential evaluation process.  He found that Zimmerlee had severe impairments of arthritis and obesity, but that her complained impairments in grip strength and pain and stiffness in her shoulders were not severe.  (R. 21).  The ALJ concluded that Zimmerlee's impairments of arthritis and obesity did not meet or equal a listing, specifically Listing 1.02 (pertaining to major dysfunction of a joint due to any cause).  (R. 21-22).  He found that Zimmerlee had the RFC to perform a complete range of sedentary work: she could sit 6 hours in an 8-hour workday, stand 2 hours in an 8-hour workday, walk 2 hours in an 8-hour workday, lift 20 pounds occasionally and 10 pounds frequently, and carry 10 pounds occasionally and 10 pounds frequently.   (R. 24).  He found no additional limitations in pushing and pulling.  *Id*.  The ALJ found that there were other jobs existing in significant numbers in the national and regional economy that Zimmerlee could perform based on her RFC, age, education, and work experience: specifically, laborer, order clerk, assembly worker, and information clerk.  (R. 26).  The ALJ thus concluded that Zimmerlee was not disabled under the Social Security Act at any time through the date of the decision.  (R. 27).

**Review**

Claimant asserts as error that the ALJ  failed to perform a proper determination at Steps Two through Five of the sequential evaluation process and failed to perform a proper credibility determination.  The Court finds that the ALJ performed a proper determination in all steps in the process and in his assessment of Zimmerlee's credibility.

At Step Two of the sequential evaluation process, the claimant must establish she has a medically severe impairment or combination of impairments that significantly limits her ability

6

to do basic work activities. 20 C.F.R. § 416.920(c).  "Basic work activities are 'abilities and

aptitudes necessary to do most jobs.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.

2004)(quoting 20 C.F.R. § 404.1521(b)).  An impairment giving rise to disability benefits is

defined as one which "results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. § 423(d)(3). Therefore, the Step Two severity determination is based on medical

factors alone. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003). Although the

claimant need only a  *de minimus* showing of an impairment at Step Two, she must show "more

than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th

Cir. 1997).

     The ALJ found that Zimmerlee's arthritis and obesity were severe impairments, but that

her complaints of stiffness and weakness in her hands and stiffness and pain in her shoulders

were not:

> The undersigned notes that the claimant testified to a "grip" problem with her
> hands.  However, while the consultative examiner did find a decreased grip
> (Exhibit 1F, page 3), there appears no objective evidence which would give rise
> to this.  Accordingly, this is found to be a non-severe impairment.  The
> undersigned also finds that the claimant's reported pain and stiffness in her
> shoulders is a non-severe impairment.

(R. 21).

     Zimmerlee contends that the ALJ erred in finding that her weak grip as well as pain and

stiffness in her shoulders were not severe impairments.  She argues that her "equivocal" Tinel's

test results and weak grip recorded by Dr. Dalesandro in his consultative examination are

evidence of carpal tunnel syndrome or muscle atrophy and thus should have been considered

severe impairments.

7

The Court finds no error.  Although Dr. Dalesandro did note an "equivocal" Tinel's sign in both of Zimmerlee's hands (R. 138-39), this "equivocal" test result does not establish that Zimmerlee suffered from carpal tunnel syndrome, let alone to a severity that would significantly limit her ability to do basic work activities.  Also none of Zimmerlee's treating physicians mentioned any indication of carpal tunnel syndrome.   Further, as the ALJ correctly noted, although Dr. Dalesandro reported decreased grip strength in both of Zimmerlee's hands, he concluded that "dexterity of gross and fine manipulation is present," there is no swelling of any of her joints, and Zimmerlee can "effectively grasp tools such as a hammer," "oppose the thumb to the finger tips," and "manipulate small objects."  (R. 139, 141). Finally, the Court agrees with the ALJ that there is no objective evidence in the record which support Zimmerlee's complaints of stiffness and weakness in her shoulders. Therefore, the Court concludes that the ALJ properly found Zimmerlee's grip problems and pain and stiffness in her shoulders were not severe. (R. 21).

At step three of the sequential process the claimant's impairment is compared to the Listings (20 C.F.R. Pt. 404, Subpt. P, App.1). If the impairment is equal or medically equivalent to an impairment in the listings, the claimant is presumed disabled.  The claimant has the burden of showing that a listing has been equaled or met. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Zimmerlee complains that the ALJ failed to consider the effects of her obesity on her arthritic left hip or the evidence establishing that she could not ambulate effectively. It is Zimmerlee's burden is to show that her impairment meets or equals Listing 1.02A; *i.e.,* that she suffers from a major dysfunction of a joint "involv[ing] . . . one major peripheral weight-bearing

8

joint (*i.e.*, hip, knee or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02A.

Contrary to Claimant's objection, the ALJ specifically considered whether Zimmerlee's leg impairment in light of her obesity met or equaled Listing 1.02 (Major dysfunction of a joint(s) (due to any cause)) and appropriately determined that it did not. (R. 21-22).   Although Zimmerlee's leg/hip impairment involves a "major peripheral weight-bearing joint," Zimmerlee has not established that she has an "inability to ambulate effectively." Listing 1.02A.   She states that she was prescribed a walking cane. However, the inability to ambulate is defined by Listing 1.00B2b(i) as "extreme limitation of the ability to walk . . . without the use of hand-held assistive device(s) that limits the functioning of *both* upper extremities." Listing 1.00B2b(i) (emphasis added).   Examples of ineffective ambulation identified in Listing 100B2b include  " the inability to walk without the use of a walker, two crutches or *two canes*, the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . the inability to carry out routine ambulatory activities, such as shopping and banking." *Id*. (emphasis added).   No part of the record indicates that Zimmerlee uses a hand-held device that limits the function of both upper extremities .

Zimmerlee also objects that the ALJ failed to consider the effects of obesity on her leg impairment.  Listing 1.00Q sets out the criteria for evaluating obesity in combination with an impairment to the musculoskeletal system and requires medically determined obesity to be considered in combination with a listing-level impairment and not as two separate impairments. The ALJ specifically stated that he took into consideration "the potential limitations, restrictions and co-morbidities that obesity might pose." (R. 22).   Thus, the Court finds that the ALJ properly performed the Step Three evaluation.

Having found that Zimmerlee did not meet or equal a listing level impairment, the ALJ properly turned to the assessment of Zimmerlee's residual functional capacity ("RFC") which is used in the Step 4 and Step 5 evaluations. 20 C.F.R. § 416.920(e).  RFC is what an individual can still do on a regular, continuing basis despite her impairment(s).  20 C.F.R. § 416.945.

> It is an administrative assessment of the extent to which an individual's medically determinable impairment(s),including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to perform work-related physical and mental activities. . . . RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule.  It is not the least an individual can do, but the most, based on all of the information in the case record.

Social Security Ruling ("SSR") 96-9p.

Consistent with the requirements set forth in SSR 96-9p, the ALJ considered the medical and non-medical evidence and determined that Zimmerlee had the RFC to perform a complete range of sedentary work.  (R. 24).  He found no non-exertional mental or physical limitations and no additional limitations in pushing and pulling.  *Id*.  He determined that Zimmerlee could sit 6 hours and stand and walk 2 hours in an 8-hour workday and could lift 20 pounds occasionally and 10 pounds frequently and carry 10 pounds frequently.

Based on the above restrictions which were set forth in the ALJ's hypothetical, the vocational expert ("VE") identified the following available unskilled, sedentary jobs: labeler, order clerk, assembly worker and information clerk.  The ALJ concluded that based on

Zimmerlee's vocational profile (44 years of age,  high-school educated, literate with no past relevant work), work history and RFC, Zimmerlee could perform the jobs identified by the VE.[3]

Zimmerlee first argues that the ALJ should have included her hand impairment in his hypothetical to the VE.  She notes that when the ALJ added frequent but not constant hand use to his hypothetical, the VE stated that the labeler job was unavailable and the number of assembly jobs were halved. (R. 229).  When the ALJ added only occasional hand use to the hypothetical, only information clerk was available.  (R. 230).

The Court concludes that the omission of any hand impairment in the RFC is not reversible error.  First, as noted above, Zimmerlee failed to establish a severe hand impairment. The record reflects that Zimmerlee complained to consulting physician, Dr. Dalesandro, of pain and stiffness in her fingers. (R. 137). Although Dr. Dalesandro noted an "equivocal" Tinel's sign and decreased grip strength in both of Zimmerlee's hands, he concluded that "dexterity of gross and fine manipulation is present," there is no swelling of any of her joints, and Zimmerlee can "effectively grasp tools such as a hammer," "oppose the thumb to the finger tips," and "manipulate small objects."  (R. 139, 141). His evaluation of Zimmerlee's hands and wrists

---

[3]    Claimant also objects to the ALJ's listing of "laborer" as one the jobs Zimmerlee could perform as the Dictionary of Occupational Titles ("DOT") does not identify any laborer jobs as sedentary. This is obviously an error in transcription as the VE never mentioned "laborer" and the number of jobs regionally and nationally cited by the ALJ in this category  (600 and 46,000) corresponds to the number of "labelers" the VE identified regionally and nationally.  (R. 26).  The Court thus finds that the ALJ intended to list "labeler" instead of "laborer" as one of  the jobs Zimmerlee could perform.
    In any case, if all the jobs under the title of "laborer" were removed from the total number of jobs that one with Zimmerlee's limitations could perform, 4,850 would still be available within the region and 543,000 appropriate jobs would be available nationwide.  Therefore, the Commissioner has still carried his burden to show by positive evidence that a significant number of other jobs exist that a person with Zimmerlee's limitations could perform.

showed a full range of motion. (R.141).   Based on the record, the Court cannot find that the ALJ

erred in not including a hand impairment in the hypothetical question posed to the VE.

Zimmerlee also contends that the ALJ erred in determining she could perform a complete

range of sedentary work because the nontreating, nonexamining DDS physician in the

assessment of Zimmerlee's RFC included a restriction in the use of foot controls based on her

short left leg and decreased range of motion. (R. 145A).  However, while light work requires

some pushing and pulling of leg controls, sedentary work, which the ALJ found Zimmerlee was

capable of performing, does not.  20 C.F.R. § 416.967(a) and (b).  Sedentary work involves -

> lifting no more than 10 pounds at a time and occasionally lifting or carrying
> articles like docket files, ledgers, and small tools.  Although a sedentary job is
> defined as one which involves sitting, a certain amount of walking and standing is
> often necessary in carrying out job duties.  Jobs are sedentary if walking and
> standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).   SSR 96-9p confirms that "limitations or restrictions on the ability to

push or pull will generally have little effect on the unskilled sedentary occupational base." SSR

96-9p; *see also  Saiz v. Barnhart* 392 F.3d 397, 400 (10th Cir. 2004) ( "A finding of disability

usually applies when a full range of sedentary work is *significantly* eroded.") (emphasis added).

Thus, if the ALJ erred in not including this restriction, such would not be reversible error as the

jobs he determined she could perform did not require use of foot controls.

Finally, Zimmerlee asserts that the ALJ failed to perform a proper credibility

determination.  In reviewing credibility determinations, the trier of fact is given great deference.

*White*, 287 F.3d at 905.  When determining credibility, the ALJ is to set forth "specific reasons

for the finding on credibility" that can be supported by the evidence in the case record. SSR-96-

7.  Otherwise, the Court will be "left to speculate what specific evidence led the ALJ to find

claimant's pain was not disabling." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  The

ALJ is not "required to develop a formalistic factor-by-factor recitation of evidence . . .[s]o long

as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility,

the dictates of *Kepler* are satisfied." *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)*.*

In the present case, the ALJ's discussion was not conclusory.  The ALJ explained his

reasons for finding that Claimant's pain was not as severe as Claimant alleged, and his

explanation covers two lengthy paragraphs in his decision.  (R. 23).  He accurately recited

Zimmerlee's testimony as to her limitations and pain.  *Id.*   And he compared her alleged

symptoms and limitations with her other testimony and the medical evidence.  Finding them

"somewhat inconsistent," he concluded that her allegations of disability were not "fully

credible":

> The claimant has reported that she is unable to work at any exertional level
> whatsoever or in any modified environment on a full time basis primarily due to
> her left hip and leg problems stemming from osteoarthritis.  However, the record
> indicates that she has had this deformity and complaints of pain most of her life,
> and has been able to function.  Additionally, she is able to take care of herself,
> most of her household chores including laundry and shopping, and is still able to
> drive.  Accordingly, the claimant's allegations of being unable to work full time
> at any exertional level are found to be not fully credible.

*Id.*  The Court, therefore, is not left to speculate regarding the evidence that led the ALJ to his

conclusion, as was the court in *Kepler.*

Further,  Zimmerlee does not demonstrate any material factual errors made by the ALJ.

Instead, she appears to ask this Court to re-weigh the evidence, and this, the Court will not do.

*See White*, 287 F.3d at 908 (declining to re-weigh evidence).

13

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  The decision is affirmed.

DATED this 6th day of March, 2006.


Paul J. Cleary
United States Magistrate Judge